By the Court.—Jones, J.
I do not understand that the court of appeals, in its decision upon the appeal taken from the .judgment of dismissal of the complaint entered on the second trial of this case, intended to or did overrule its previous decision upon the appeal taken from the judgment entered on the first trial, to the effect that upon the facts and evidence appearing and given on the first trial, the deceased was guilty of contributory negligence, but only held that additional facts appeared on the second trial, which relieved the plaintiff from the charge of contributory negligence. .
If these additional facts do not now appear, or if they are so charged as that the effect ascribed to them on the appeal from the second judgment no longer flows from them, or if other facts are made to appear, which overcome the force of these additional facts, then the decision of the court of appeals on the appeal from the first judgment is, so far as this court is concerned, conclusive on the point of contributory negligence on the part of the deceased.
The additional facts pointed out by the court on the appeal from the second judgment are:
1. That the sight of the deceased was impaired, so that he could see only about ninety or one hundred feet.
2. That the brakeman called out, “ All out for Mount Vernon.”
*59 3. That the deceased, in returning home, always took the last train—the 6.40 train—and that this was his uniform rule, and that on the day in question he returned by the early train.
4. That the testimony, and without contradiction, showed that no whistle was sounded or bell rung on board of the express train until after the accident.
5. That the platform, which was on the east side of the railroad, was placed there at a time when the passenger station and depot were on that side of the railroad track, and that afterwards the station and depot buildings were built on the west side of the road, and a platform was then built on the side where the station then was, the old one being continued on the east side, and used for up-train passengers.
6. That a time-table was given in evidence, which showed that "the time appointed for the up-train to leave that station, was 3.27 p. m., and that for the express train to pass, was 3.28 p. m.
7. That the train made its full stop at the usual place, and the brakeman gave the call for the passengers to get out.
Upon the trial, resulting in the judgment from which the present appeal is taken, there was no evidence that the deceased, in returning home, always took the last train, or that that was his uniform rule, or that on the day in question he returned by the early -train because his wife was sick, nor was there any timetable put in evidence. Therefore, the above third and sixth points Of difference do not now exist;
With reference to the fourth point, the testimony is now the same as on the first trial, viz : several persons swore that they heard no- whistle or bell, while others swore they heard the whistle; and the engineer and brakeman of the express train swore that the whistle was sounded and the bell rung.
With reference to the seventh point, there was the *60 same conflict on this as on the first trial,, some witnesses swearing that the up-train had arrived at the usual place for stopping, and some to a full stop, before the deceased attempted to get off; others swearing that it had not yet arrived, but was still in motion, on its way to the station.
As to the fifth point, there is no evidence that the platform, which at the time of the accident was on the east side of the track, was placed there at the time when the passenger station and depot were on that side. /
As to the second point, and the last part of the seventh, the evidence now is, that all the brakeman sung out was simply, “Mount Vernon”—not “All out for Mount Vernonthat, the brakeman so sung out as the train was nearing the station, and before it had arrived.
The effect of the two cries is different. While the latter may possibly be regarded as a direction to leave the cars, and a guaranty that it is safe to do so, the former cannot be regarded in any other light than as simply informing the passengers of the name of the station which the train was approaching and would stop at, and that those intending.to stop at that station might be apprised that they would shortly arrive at their destination, and be prepared to alight on arrival.
Thus, of the above points of difference between the first and second trials, none now exist, except only the first one.
The question in this case is, whether the deceased was guilty of concurring negligence in getting off the cars on the side and at the time he did.
The court of appeals, on the first appeal, held that he was ; because, if he did not look, that was negligence ; if he did look, he must have seen the express *61 train; and to get off in the manner he did, knowing that this train was coming, was negligence.
It is sought to overcome the effect of this decision, by showing that his vision was impaired, and arguing that, by reason thereof, he could not have seen the approaching train until too late, if he had looked, and, therefore, whether he looked or did not look, he was not guilty of negligence.
I do not myself regard the argument as sound; yet, as the court of last resort, on the second appeal, regarded it (with others) as a circumstance which would authorize the jury to find in favor of the plaintiff, I think I am not at liberty to hold that this defect (if its effect is not in some way counterbalanced) does not relieve the deceased from the charge of concurring negligence.
But I think its effect is completely overcome by other undisputed facts in the case. The down express train made a great noise. Several witnesses testified they heard it coming. One testifies that he was standing on the lower steps of the rear platform of the smoking car, preparatory to getting off, when he heard the express train, and it stopped him; that he saw the deceased come out on the front platform of the first passenger car, and proceed to get off the car, and that he said to deceased, “Be careful; it is a dangerous place to get off.” He did, however, get off. Another passenger testifies that he saw Gonzales on the platform, and that- while he (Gonzales) was on the platform, he (the witness) heard the noise of the other train coming. It is also uncontradicted that, the express train was going at the rate of twenty-eight or thirty miles an hour, until it arrived within about forty rods of the station, when it slackened its speed to fifteen or eighteen miles ; that the day on which the accident occurred was a quiet, pleasant day ; that on a still day the noise of the express train, going at the rate of *62 thirty miles an hour, can be heard about a mile off, while a train, approaching a station at the rate of three or four miles an hour, makes a very slight noise.
There is no pretence that the hearing of the deceased was defective. If his eyesight was so defective as that he could not have seen the express train at a sufficient distance for him to judge whether it was prudent for him to get off, still that did not absolve him from making a reasonable use of his organs of hearing to'ascertain whether a traing was coming.
The fact of such impaired vision, so far from absolving him from using his organs of hearing, would seem to impose on him the necessity of a more than ordinary diligent and attentive use of them.
The evidence shows that, by the reasonable and ordinary use of his organs of hearing, he could have ascertained the approach of the train, and would have been warned not to' leave the cars on which he was a passenger until, by the use óf his eyesight (which was not too defective for that purpose), he could satisfy himself that the track was clear for him to cross in safety.
It seems that, upon the facts and evidence now in the case, the decision of the court of last resort, on the first appeal, is conclusive against plaintiff’s right of recovery.
Judgment reversed, and new trial ordered, with costs to the appellant, to abide the event.